## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BRADLEY W. EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:12-CV-4454-CAP |
| APEX SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT APEX'S RESPONSE IN OPPOSITION
## TO EDWARDS' MOTION FOR PRELIMINARY INJUNCTION

Defendant Apex Systems, Inc. ("Apex"), subject to its pending Motion to Dismiss or Stay Proceedings [Doc. No. 5], hereby opposes Plaintiff Bradley W. Edwards' ("Edwards") Motion for Interlocutory Injunction ("Motion for Preliminary Injunction" or "Motion") [Doc. No. 2] as follows:

## I.   INTRODUCTION

In the Motion for Preliminary Injunction, Edwards asks this Court to enjoin Apex from doing what Apex has already done – seek to enforce a valid employment agreement (the "Agreement") that the Parties entered into on April 28, 2008 at Apex's corporate headquarters in Henrico County, Virginia at the time of Edwards' hire.  The Agreement is attached as **Exhibit A.**  In October 2012, after

learning that Edwards was in breach of the Agreement, Apex filed a breach of contract complaint in the Parties' chosen forum of Virginia (the "Virginia Action").  *See Apex Systems, Inc. v. Bradley W. Edwards,* Case No. CL12-3017 (Circuit Court of Henrico County, Virginia).  The complaint in the Virginia Action is attached as **Exhibit B**.  Edwards has already appeared in the Virginia Action, having filed a demurrer and motion to dismiss, which is set for a hearing on March 1, 2013.

The Agreement signed by the Parties provided that Virginia law would govern the Agreement and that any action arising from the Agreement would be brought **exclusively** in a Virginia court.  Yet, over a month after Apex filed its complaint in Virginia to enforce the Agreement, Edwards filed a declaratory judgment action and the instant Motion in Georgia (the "Georgia Action") in direct contravention of the mandatory forum selection clause and in an apparent attempt to forum shop.  As set forth in Apex's Motion to Dismiss [Doc. No. 5], the Georgia Action should be dismissed in favor of the previously-filed, pending Virginia Action.  Edwards' Motion for Preliminary Injunction also should be denied.

Even on the merits, however, Edwards has not (and cannot) establish that he is entitled to a preliminary injunction from this Court.  First, doing so would violate the Anti-Injunction Act, 28 U.S.C. § 2283.  Indeed, the Anti-Injunction Act

prohibits a court from enjoining a party from pursuing a pending state court action, unless the injunction satisfies a limited exception, not applicable here.  For this reason alone, the Motion for Preliminary Injunction should be denied.

Moreover, the Motion for Preliminary Injunction should be denied because Edwards cannot establish:  (1) his likelihood of success on the merits, (2) that he is suffering irreparable injury, (3) that an injunction would serve the public interest or (4) that the balance of equities favors an injunction.  Indeed, none of these four required elements are satisfied here.

Instead, in his Motion, Edwards asks this Court to excuse his blatant breach of the Agreement so that he can continue to work for a competitor of Apex and continue to solicit Apex's clients.  Apex respected its commitments under the Agreement, and Edwards should be expected to do the same.  Apex hired Edwards in a position for which he was highly compensated and was given opportunities for career advancement.  It provided Edwards with specialized training, access to confidential and proprietary information, and access to some of Apex's most significant clients, which he is now using for the benefit of Apex's competitor, Corus360.  There is no basis for the Court to enjoin Apex from asking a Virginia court to hold Edwards to the corresponding commitments that he made in the Agreement.

In sum, in consideration of the mandatory forum selection clause requiring that all actions relating to the Agreement be brought in Virginia, the fact that there is already a state court action pending in Virginia to enforce the Agreement, and that Edwards cannot satisfy his burden to establish the requirements for the drastic remedy of injunction, the Motion for Preliminary Injunction should be denied.

## II.   STATEMENT OF FACTS

**A.   <u>Edwards Applied for Employment with Apex</u>**

Apex provides qualified personnel to its customers for temporary contract assignments and permanent placements in the fields of information technology, finance, accounting and business applications.  (Edwards' Petition ("Petition"), ¶ 10.)  Apex is a Virginia corporation, with its corporate offices in Virginia, and it has a single branch office in Atlanta, Georgia.  (*Id.* ¶ 2; Declaration of Michele McCauley ("McCauley Decl.") at ¶ 3, attached as **Exhibit C**.)

On or about April 11, 2008, Edwards applied for the Account Manager position with Apex.  (Supplemental Declaration of Michele McCauley ("McCauley Supp. Decl.") at ¶ 3, attached as **Exhibit D.**)  In his cover e-mail, Edwards explained that he had recently moved to Georgia from California, was seeking compensation with "uncapped commissions," and he attached a copy of his résumé.  (*Id.*¶ 3, Exs. 1, 2.)  On his résumé, Edwards described himself as an

"[a]ccomplished professional with five plus years of business-to-business sales experience … looking to make a career change that matches superior results with compensation and career advancement." (*Id.¶* 3, Ex. 2)  Edwards' résumé also indicated that he graduated with a bachelor's degree in business and marketing from East Carolina University in December 2001.  (*Id.*; *see also* Petition, ¶ 9.)

B.  **Edwards' Employment with Apex**

In April 2008, Apex offered Edwards a position as an Account Manager, and assigned him to Apex's Atlanta branch office.  (Petition, ¶¶ 1, 10, 11, 13.)  As an Account Manager, Edwards' responsibilities included making contacts with current and prospective customers of Apex for potential business and maintaining those contacts, overseeing the selection of qualified candidates to fill positions at customers' worksites, and determining whether particular candidates will meet the customers' specified needs.  (*Id.* ¶ 12.)

Account Managers are the linchpins connecting Apex to its customers. (Declaration of Doug Kenney ("Kenney Decl.") at ¶ 3, attached as **Exhibit E**.) Apex encourages its Account Managers to spend time developing and fostering strong relationships with customers and prospective customers and provides them with an expense account to use in this regard.  (*Id.*)  Apex also provides its

Account Managers, like Edwards, with security access cards in order to access the facilities of Apex customers.  (*Id.*)

**C.    Edwards and Apex Entered into the Agreement in Virginia**

On or about April 28, 2008, Edwards traveled to Apex's corporate headquarters in Glen Allen (Henrico County), Virginia for several days of new-hire training.  (Petition, ¶ 13.)   To protect its legitimate business interests, Apex requires that Account Managers, like Edwards, sign an employment agreement containing confidentiality, non-competition, non-solicitation, and non-disclosure provisions.  (McCauley Decl. at ¶ 6.)  On April 28, 2008, while he was in Virginia, Edwards entered into such agreement with Apex.  (*Id.* ¶¶ 4, 5; *see also* Agreement.)  Edwards, who is a college graduate, initialed each page of the Agreement, and signed the last page of the Agreement.  (McCauley Supp. Decl. at ¶ 5; *see also* Agreement.)

Among numerous other provisions, the Agreement includes restrictive covenants (the "Covenants") that provide, *inter alia,* that for 18 months after the termination of his employment, Edwards would refrain from working for a competitor within 50 miles of Apex's Atlanta office in the same or substantially similar position that he held with Apex, and from soliciting Apex's customers and employees.  (Agreement, ¶ 3.)  The Agreement also contained a "Return of

Company Materials" section in which Edwards agreed that he would "return all the Company's property within three (3) days following the cessation of [his] employment for any reason."  (Agreement, ¶ 7.)  By signing the Agreement, Edwards acknowledged that the restrictive terms of the Agreement were reasonable and necessary to protect Apex's legitimate business interests. (Agreement, ¶ 12.)

On the final page of the Agreement, Edwards executed his full signature, agreeing that:

> **EMPLOYEE HAS CAREFULLY READ AND UNDERSTANDS THE PROVISIONS OF THIS AGREEMENT.   EMPLOYEE   FURTHER ACKNOWLEDGES THAT EMPLOYEE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH EMPLOYEE'S PRIVATE LEGAL COUNSEL AT EMPLOYEE'S OWN EXPENSE AND HAS AVAILED HIM/HERSELF OF THAT OPPORTUNITY TO THE EXTENT THAT EMPLOYEE WISHES TO DO SO.**

(Agreement, ¶ 20 (emphasis in original); *see also* Petition, ¶ 23.)

## D.      Edwards Agreed to a Mandatory Forum Selection Clause

The Agreement contains a mandatory forum selection clause requiring that actions arising out of the Agreement be brought only in Virginia.  (Petition, ¶ 39.) Specifically, Apex and Edwards expressly agreed that:

> … they will not file any action arising out of this Agreement other than in a state or federal court located in Richmond, Commonwealth of Virginia, or in the adjacent counties of Henrico or Chesterfield. ("Forum"). ***The Parties consent to personal jurisdiction and venue solely within this Forum and waive all otherwise possible objections thereto***.

(Agreement, ¶ 11 (emphasis added); *see also* Petition, ¶ 23.)  The Parties also agreed that the Agreement "shall be governed, enforced and interpreted according to the laws of the Commonwealth of Virginia."  (Agreement ¶ 16; *see also* Petition, ¶ 40.)

### E.   Edwards' Access to Apex's Competitive and Proprietary Information

Throughout his employment with Apex, and as an Account Manager who was later promoted to Senior Account Manager and ultimately Lead Account Executive, Edwards had access to some of the most important competitive and proprietary information that Apex possesses, including its Confidential Information and Trade Secrets.  (Kenney Decl. at ¶ 4.)  Edwards was provided information regarding Apex customers' contracting habits, the amount and types of services they sought, the identities of decision makers, special incentives that Apex offers its customers, and Apex's strategies against its competitors.  (*Id.*)  Edwards was also made aware of Apex's strategies and tactics for obtaining requisitions from customers and had access to those customers.  (*Id.*)  Edwards' role with Apex

8

required and involved direct knowledge of Apex's customers, customer needs,

ongoing work for customers, and pricing and fee information, including costs and

profit information, which allow Apex to remain competitive in the industry.  (*Id.*)

During his employment with Apex, Edwards was assigned to Apex's

customers, Primedia, McKesson, and Emory Healthcare, among others, and

Edwards had material contact with these customers.  (Kenney Decl. at ¶ 5.)[1]

Edwards was also issued a security access badge to enter the offices and facilities

of certain of Apex's customers, such as McKesson.  (*Id.*)  Moreover, Edwards

participated in daily sales briefings about other customers, including but not

limited to McKesson, Primedia, and Emory Healthcare, and he received significant

confidential information about customer accounts during those meetings. (*Id.*)

## F.   Edwards Breached the Agreement and Apex Sent a Cease and Desist Letter

On or about August 31, 2012, Edwards resigned from Apex and, soon after,

began working for Corus 360, a direct competitor of Apex in Atlanta, Georgia.

(Petition, ¶¶ 10, 17, 19; *see also* Kenney Decl. at ¶ 7.)  On October 1, 2012, Apex's

General Counsel sent Edwards a letter regarding his obligations under the

---

[1] For the period from January 2012 through September 2012, the customers with whom Edwards worked, such as Primedia, McKesson, and Emory Healthcare, accounted for approximately $2.5 million of Apex's gross billings for that period, and for which Edwards was paid sizeable commissions.  (Kenney Decl. at ¶ 6.)

Agreement.  (Petition, ¶ 46 and Ex. B [Doc. No. 1-1 at 36-37].)  Specifically, Apex reminded Edwards that he agreed not to "compete with Apex by performing services of the type [he] provided to Apex within a restricted territory defined as that area within a 50-mile radius from 53 Perimeter Center East, Suite 300, Atlanta, Georgia, 30346." (*Id.*)  Edwards was asked to provide written assurances that he was in compliance with his obligations to Apex.  (*Id.*)  Apex also reminded Edwards that he "consented to the application of Virginia law to the interpretation and construction of the agreement, and to the jurisdiction of courts sitting in Virginia should any dispute over the agreement be litigated."  (*Id.*)

## G.   Edwards Refused to Comply with the Agreement

On October 5, 2012, in response to Apex's cease and desist letter, Edwards, through his counsel, confirmed that he began working for Corus360 soon after resigning from Apex.  (Oct. 5, 2012 Letter, attached as **Exhibit F**.)  Edwards also responded that he did not believe that the Covenants in the Agreement that he entered into in consideration of his hire with Apex were enforceable.  (*Id.*)  Specifically, Edwards responded:

> Our preliminary review of Virginia law, even if it was held to apply, indicates that there are significant issues for the covenants in Virginia as well. *See, e.g., Simmons v. Miller,* 261 Va. 561 (2001); *Daston v. Micore Solutions, Inc.,* 80 Va. Cir. 611 (2010); *Lasership, inc.* [sic] *v. Watson,* 79 Va. Cir. 2[0]05 (2009).

10

(*Id.*)  Edwards further noted that, even if he was not permitted to work within a 50-mile radius of Apex's Atlanta Office, "Edwards could clearly compete with Apex if he was outside the 50-mile radius" as "Corus360 maintains offices in Orlando, Florida and other localities."  (*Id.*)

**H.**   **Edwards uses Apex Property to Solicit Business for Corus360**

After the exchange of letters, Apex learned that, on September 29, 2012, while employed by Corus360, Edwards used the security access badge that Apex provided to Edwards while he was employed with Apex to access the offices of Apex's customer, McKesson.  (Declaration of Dustin Sandoval ("Sandoval Decl.") at ¶ 3, attached as **Exhibit G.**)   Apex understands that Edwards accessed McKesson's facilities in order to solicit business from McKesson on behalf of Corus360.   (*Id.*)   Edwards did not have permission or authorization from Apex to use the security access badge to access McKesson's facilities any time after the cessation of Edwards' employment with Apex.  (*Id.* at ¶ 4.)

**I.**   **The Virginia Action**

On October 26, 2012, Apex filed the Virginia Action for breach of contract against Edwards in the parties' chosen forum.  (Exhibit B.)  In response, on November 29, 2012, Edwards filed a motion to dismiss, or in the alternative, motion to stay, and a demurrer.  The hearing on Edwards' motion to dismiss and

demurrer in the Virginia Action has been set for March 1, 2013.

**J.    The Georgia Action**

On November 28, 2012, in direct contravention of the mandatory forum selection clause, Edwards filed his declaratory judgment action in the Superior Court of Fulton County along with a motion for interlocutory injunction.  On December 28, 2012, Apex removed Edwards' action to this Court [Doc. No. 1]. By Order dated December 28, 2012, the Court directed Apex to respond to Edwards' Motion for a Preliminary Injunction by no later than January 7, 2013 [Doc. No. 3].  On January 2, 2012, Apex filed its Motion to Dismiss or, in the Alternative, to Stay Proceedings [Doc. No. 5].

**III.    ARGUMENT AND AUTHORITY**

Edwards has not (and cannot) establish that he is entitled to a preliminary injunction from this Court.  To support his Motion, Edwards argues that he was "forced" to sign the Agreement, that he has "diligently" honored the Agreement, that the relevant provisions of the Agreement are invalid under Georgia law, and that allowing Apex to proceed in Virginia would violate the public policy of Georgia.  Edwards' arguments are wholly without merit and his Motion should be denied on several independent grounds: (1) the mandatory forum selection clause in the Agreement is valid and enforceable, (2) issuing Edwards' requested

injunction would violate the Anti-Injunction Act, and (3) Edwards cannot satisfy the necessary standard warranting a preliminary injunction.

**A.      The Mandatory Forum Selection Clause is Enforceable, Warranting Dismissal of the Georgia Action in Favor of the First-Filed Virginia Action.**

The forum selection clause in the Agreement provides that actions arising out of the Agreement shall be brought **exclusively** in Virginia.  (Agreement, ¶ 11.) Mandatory forum selection clauses such as this are presumptively valid and enforceable absent a "strong showing that enforcement would be unfair or unreasonable under the circumstances."  *See Slater v. Energy Servs. Group Int'l,* 634 F.3d 1326, 1331-1333 (11th Cir. 2011) (affirming dismissal of plaintiff's claims based on a forum selection clause requiring claims to be brought in a court in Richmond, Virginia).[2]

Yet, in his Motion, Edwards argues that the forum selection clause and choice of law provisions are unenforceable because (1) when he executed the Agreement, Apex had overwhelming bargaining power against him and he did not have the Agreement reviewed by an attorney, (2) he has no connections in Virginia

---

[2] As discussed in Apex's Motion to Dismiss, to overcome a forum selection clause, a party must make a strong showing that: (1) the contract's formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of his day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy. *Slater,* 634 F.3d at 1331.  Edwards cannot do that here.

and litigating there would be an undue burden on him, and (3) allowing a Virginia court to adjudicate this dispute could result in harm to the public policy of Georgia and its workers.  (Edwards' Br. [Doc. No. 2] at 16-18.)  As outlined below, and in Apex's Motion to Dismiss [Doc. No. 5], these arguments fail to satisfy the necessary strong showing.

1. **Edwards Freely Signed the Agreement During his On-Boarding Training in Virginia, and he Acknowledged that he Read and Understood the Terms of the Agreement.**

First, Edwards makes only conclusory arguments that he was "forced" to sign the Agreement, fails to make the specific allegations necessary to invalidate a forum selection clause, and fails to offer any evidence to substantiate his assertions.  *See Rucker v. Oasis Legal Fin.,* 632 F.3d 1231, 1236 (11th Cir. 2011) (citing *Lipcon*, 148 F.3d at 1296 ("By requiring the plaintiff to specifically allege that the [forum selection] clause itself was included in the contract due to fraud … courts may ensure that more general claims of fraud will be litigated in the chosen forum, in accordance with the contractual expectations of the parties.")); *Brinson v. Martin,* 220 Ga. App. 638, 640 (1996) (conclusory allegations in an affidavit are insufficient to show fraud, overreaching or that there was a manifest disparity of bargaining power).  Moreover, contrary to Edwards' conclusory allegations, he was not "forced" to sign the Agreement.  (McCauley Supp. Decl. at ¶ 4.)  To the

contrary, new hires are presented with agreements at the start of training and are provided time to review and consider the agreements. (*Id.*) Edwards voluntarily signed the Agreement, never expressed any concerns about the Agreement during on-boarding, and at no point thereafter attempted to rescind the Agreement. (*Id.* at ¶ 6.)

In addition, Edwards' argument that he was not given an opportunity to consult with an attorney is belied by the Agreement itself. The Agreement provides, in bold print and capital letters that "Employee carefully read and understands the provisions of this Agreement" and that he was "given the opportunity to discuss the Agreement with [his] private legal counsel at [his] own expense" and has availed himself of "that opportunity to the extent that [he] wished to do so." (Agreement, ¶ 20); *see also Brinson,* 220 Ga. App. at 639 ("one who signs a contract is presumed to know its contents"). Whether Edwards took Apex's recommendation has no effect on the validity of the forum selection clause.

Edwards chose to execute the Agreement and chose to be employed by Apex. (*See* McCauley Supp. Decl. at ¶ 4.) In return, he received the specialized training, instruction, access to confidential information, career advancements, and generous pay and benefits that he stated he wanted prior to being hired. (*See* Declaration of Rob Dudley ("Dudley Decl."), attached as **Exhibit H**, at ¶¶ 4-7;

McCauley Supp. Decl. at ¶¶ 3, 4.)

### 2. Edwards had Significant Connections with Virginia through his Employment with Apex.

Second, Edwards' claim that he had no connections with Virginia should be rejected. As an initial matter, courts do not invalidate forum selection clauses where a plaintiff, like Edwards, argues that litigating in the chosen forum "would be an undue burden on him" because he has "no connections" to the chosen forum. *See Rickers,* 632 F.3d at 1236-1237 (explaining that the financial difficulty that a party might have in litigating the selected forum is not a sufficient ground for refusal to enforce a valid forum selection clause). In addition, here, Edwards does have ample connections to Virginia. Indeed, Edwards admits that he was employed by a Virginia company for over four years, received specialized training in Virginia, signed a contract with Apex in Virginia, and consented to personal jurisdiction and venue in Virginia. (Petition, ¶¶ 2, 10, 13, 23; *see also* McCauley Decl., ¶¶ 3-11.) Any inconvenience Edwards might suffer by litigating in Virginia was foreseeable at the time of contracting. *Rickers,* 632 F.3d at 1236-37*; see also Bremen,* 407 U.S. at 17-18.

### 3. Litigating in Virginia does not Violate Georgia Public Policy.

Third, Edwards fails to make the necessary showing that litigating in Virginia violates the public policy of Georgia. Instead, to support his argument,

Edwards compares a Virginia and Georgia case – *Blue Ridge Anesthesia and Critical Care, Inc. v. Giddick,* 239 Va. 369 (1990) (Virginia upholds restrictive covenants which are reasonably necessary to protect employer's interests and do not impose undue burden on employees) and *Paramount Tax & Acct'g, LLC v. H&R Block E. Enters., Inc.,* 299 Ga. App. 596 (2009) (recognizing employee's right to earn a living).  (Edwards' Br. at 17-18.)  However, a reading of these cases reveals that the public policies of Georgia and Virginia are harmonious as to the enforceability of restrictive covenants in employment contracts.  Indeed, under either state's law, covenants which unreasonably restrict an employee's right to earn a living are unenforceable.  *Compare Paramount,* 299 Ga. App. at 600-602 *with Blue Ridge,* 239 Va. at 372-273.[3]

Finally, Edwards' reliance on *Carson v. Obor Holding, Co., LLC,* No. A12A0891, 2012 Ga. App. LEXIS 971 (Nov. 20, 2012) is similarly misplaced. (Edwards' Br. at 17.)  In *Carson,* the court ruled that a forum selection clause was unenforceable and against Georgia public policy because the court in the selected forum (Florida) would (1) blue-pencil the restrictive covenants to make them enforceable and (2) in doing so, would <u>not</u> consider any hardship, economic or

---

[3] Because the Agreement was signed in April 2008, enforceability of the Agreement would not be analyzed under the 2011 changes to Georgia law regarding restrictive covenants.  *See Gordon Document Prods. v. Serv. Techs.,* 208 Ga. App. 445, 448 n.5 (2011).

otherwise that might be caused to the person against whom enforcement is sought. *Id.* at *19, 20.  To support its decision that the forum selection clause was unenforceable, the court explained that a Florida court would likely enforce a non-compete even though it prohibited the former employee from working for a competitor in any capacity and despite the fact that it contained no territorial restriction.  *Id.* at *21.

In this case, and by Edwards' own admission, Virginia and Georgia share the same strong public policy against restrict covenants against trade, and apply strict scrutiny to restrictive covenants in employment agreements.  (*See* Exhibit F.) Indeed, in his Oct. 5, 2012 letter, Edwards cites three Virginia cases which make clear that, as in Georgia, restrictive covenants on trade are not favored and will not be enforced if (1) they are greater than necessary to protect the legitimate business interests of the employer, (2) they will be unduly burdensome on an employee's ability to earn a living, and (3) they are against sound policy.  *See, e.g., Lasership,* 79 Va. Cir. at 210-11 (holding that a non-compete that prohibits employees from working in any capacity for a competitor is overbroad and unenforceable); *Simmons,* 261 Va. at 581 (finding a non-compete without a geographic restriction to be overbroad and unenforceable).  Further, like Georgia courts, Virginia courts will not blue-pencil or modify restrictive covenants to make them enforceable.

*See, e.g., Daston,* 80 Va. Cir. at 618 (explaining that Virginia courts will not modify agreements so that it complies with law).

Consequently and in sum, because enforcement of the forum selection clause is not unreasonable under the circumstances and is not contrary to strong Georgia public policy, the forum selection clause should be enforced, the preliminary injunction should be denied, and this action should be dismissed in favor of the Virginia Action.  *See Hasty v. St. Jude Med. S.C. Inc.,* No. 7:06-CV-102(HL), 2007 U.S. Dist. LEXIS 34635, *18 (M.D. Ga.  May 11, 2007) (determining that a Minnesota forum selection clause in an employment agreement was valid and enforceable); *Rode v. St. Jude Med., S.C., Inc*., No. 106-CV-02448-WSD, 2006 U.S. Dist. LEXIS 91911, *10 (N.D. Ga. Dec. 20, 2006) (upholding forum selection clause where plaintiff "at most speculate[d] that a foreign court might apply law contrary to Georgia public policy, and argue[d] that this possibility justifies refusing to enforce an otherwise valid foreign selection clause."); *Crump Ins. Svs. v. All Risks, Ltd.,* 315 Ga. App. 490, 490-494 (2012) (affirming dismissal of declaratory judgment action regarding restrictive covenants based on a forum selection clause even though the former employees resided in Georgia, worked in Georgia and the restrictive covenants were unenforceable under Georgia law); *Iero v. Mohawk Finishing Prods., Inc.,* 243 Ga. App. 670, 670 (2000) (explaining

that "a forum selection clause in an employment contract may be enforced when the contract also contains noncompetition and nondisclosure covenants that violate Georgia public policy.")

**B.**     **The Requested Injunction would Violate the Anti-Injunction Act.**

The Motion for Preliminary Injunction also should be denied because the relief sought violates the Anti-Injunction Act.  A federal court's power to enjoin a party from pursuing ongoing state proceedings is governed by the Anti-Injunction Act, 28 U.S.C. § 2283.  The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  The Anti-Injunction Act is an "absolute prohibition" against enjoining a state court action unless the injunction satisfies one of the three limited exceptions.  *First Fed. Savings and Loan Assoc. of Warner Robins v. Ohio Valley Savings and Loan Assoc. of Steubenville, Ohio,* 666 F. Supp. 215, 216 (M.D. Ga. 1987).  Moreover, the prohibition applies whether the movant seeks an injunction against the parties to a state court proceeding or against the state court itself.  *Id.* at 217; *Nagy v. Consol. Servs. Group.,* No. 09-1756 (MLC), 2009 U.S. Dist. LEXIS 46947, *14 (D. N.J. June 3, 2009).

Here, Edwards cannot identify any exception that applies to his request, and therefore his request for injunctive relief should be denied.  *See, e.g., Nagy, supra*, at *15016 (denying plaintiff's request for injunctive relief to prevent her former employer from prosecuting the state court breach of contract action); *Salem Women's Clinic v. Salem Hosp.,* No. 07-6092-HO, 2008 U.S. Dist. LEXIS 60858, *13 (D. Or. Aug. 5, 2008) (denying plaintiffs request to enjoin defendant from prosecuting state court case regarding restrictive covenants).

## C.     **Edwards Cannot Satisfy his Burden for a Preliminary Injunction.**

A party seeking a preliminary injunction must show "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."  *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1223, 1225-26 (11th Cir. 2005).   The movant must carry the burden of persuasion on all four requirements.  Because a preliminary injunction is a drastic remedy which should be used sparingly, this Court should not issue a preliminary injunction unless Edwards clearly meets his burden of proof as to each of the four requisites.  *See Morgan Stanley DW, Inc. v. Frisby,* 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001).

1.    **Edwards Cannot Satisfy the Requirements for an Injunction.**

    a.    *Edwards cannot establish a substantial likelihood for success on the merits.*

Edwards admits that the Agreement at issue contains both a Virginia choice of law provision and a mandatory forum selection clause which requires that all actions arising out of the Agreement must be brought in Virginia (Petition, ¶¶ 16, 39). As outlined above, as well as in Apex's Motion to Dismiss, there is not a substantial likelihood of success on the merits regarding the enforceability of the forum selection clause.[4]   Consequently, Edwards fails to satisfy the first requisite of the necessary showing.

    b.    *Edwards fails to demonstrate irreparable injury.*

As to the second requirement, the purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. *Carvalho v. Credit Suisse Secs. (USA) LLC,* No. 1:07-CV-2612-RWS, 2007 U.S. Dist. LEXIS 80651, *1 (N.D. Ga. Oct. 31, 2007). In this case, Apex has *already* initiated proceedings to enforce the forum selection clause and other provisions of the Agreement which will resolve the

---

[4] Further, while Edwards claims a "total lack of wrongdoing" and asserts that he "lacks any confidential, proprietary, or trade secret information belonging to Apex" (Edwards' Br. at 2, 10), he does nothing to refute the allegation that he used an Apex-issued security badge in order to access the premises of an Apex customer to solicit business on behalf of Corus360. (*See* Sandoval Decl. at ¶ 3.)

Parties disputed issues regarding the Agreement.   Edwards can point to no injury that he will suffer before the Virginia court (or this Court) can resolve the Parties' dispute, consequently there is no substantial threat of irreparable injury and Edwards' request for injunctive relief is due to be denied.  *See Carvalho,* 2007 U.S. Dist. LEXIS 80651, *3 (denying plaintiff's request to enjoin former employer from enforcing restrictive covenants).[5]

### c.      *The balance of injury favors denial of the injunction.*

As to the third requirement, because there is *no threat* of irreparable injury to Edwards if the injunction is not issued, it cannot outweigh the harm the relief would inflict on Apex as the non-movant.  Indeed, preventing Apex from enforcing the Agreement will result in irreparable injury and damage to Apex.  (Agreement, ¶ 12(a).)  Specifically, Apex will suffer if it is enjoined from seeking to enforce the restrictive covenants and prevent Edwards from continuing to use Apex-issued property and account information to solicit Apex customers on behalf of Edwards' new employer.  *See Variable Annuity Life Ins. Co. v. Joiner,* 454 F. Supp. 2d 1297, 1304 (S.D. Ga. 2006) (finding irreparable injury due to loss of good will and customers).  Thus, the balance of the injuries weighs in favor of Apex.

---

[5] Further, Edwards concedes that if the Agreement is enforced, Corus360 could employ him in Florida or in any of its other locations.  (Exhibit F.)  Moreover, the Agreement does not prevent Edwards from working for a non-competitive entity or from working for a competitor outside the 50-mile radius of Apex's Atlanta office.

### d.   *The injunctive relief requested would not serve the public interest.*

As to the fourth requirement, Edwards fails to demonstrate how the injunctive relief requested will serve the public interest.  Instead, allowing Apex to seek to enforce the Agreement would not prevent Edwards from his right to earn a living and does not trump "the law's interest in upholding and protecting freedom to contract and to enforce contractual rights and obligations."  *Mohr v. Bank of N.Y. Mellon Corp.,* 393 Fed. Appx. 639, 646 (11th Cir. 2010); *see also Variable Annuity Life Ins. Co.,* 454 F. Supp. 2d at 1305 ("A cognizable public interest exists in upholding an agreement pursuant to which an employer sought to protect itself from post-termination piracy of the most valuable information it owns…."). Consequently, issuance of the injunction will not serve the public interest.

## 2.   Security.

Pursuant to Federal Rule of Civil Procedure 65(c), a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  In this case, preventing Apex from enforcing the forum selection clause and other provisions of the Agreement would result in the loss of customers and goodwill.  Consequently, Apex believes

that, should the injunction issue, Edwards should be required to post a bond in the amount of at least $300,000.

## IV.   CONCLUSION

For the foregoing reasons, and as outlined in Apex's Motion to Dismiss, Apex respectfully requests that this Court enforce the mandatory forum selection clause, deny Edwards' request for an injunction, and dismiss or stay this action in favor of the first-filed Virginia Action.

Respectfully submitted this 7th day of January, 2013.

*/s/ Kristina N. Klein*
Laura D. Windsor
Georgia Bar No. 770434
*laura.windsor@troutmansanders.com*
Kristina N. Klein
Georgia Bar No. 152150
*kristina.klein@troutmansanders.com*

TROUTMAN SANDERS LLP
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA  30308-2216
(404) 885-3000
(404) 885-3900 (fax)

*Counsel for Defendant*
*Apex Systems, Inc.*

**<u>Certification of Counsel</u>**

I hereby certify, pursuant to Local Rule 7.1D, that this document is submitted in Times New Roman 14-point type.

*/s/ Kristina N. Klein*
Kristina N. Klein
Georgia Bar No. 152150

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this date filed the within and foregoing

***Response in Opposition to Edwards' Motion for Preliminary Injunction*** using the

Court's ECF system, which will transmit a notice of electronic filing to the

Plaintiff's attorneys of record, Richard L. Robbins at rrobbins@robbinsfirm.com

and Heather H. Sharp at hsharp@robbinsfirm.com.

This 7th day of January, 2013.

*/s/ Kristina N. Klein*
Kristina N. Klein
Georgia Bar No. 152150